Good afternoon, Your Honors. Matt Campbell from the Federal Defenders of Eastern Washington. Have you been with this case the whole time? I have not, Your Honor, only recently, but it's been enjoyable so far. The issue here is whether an out-of-state misdemeanor, which doesn't exist in any form in the state of Washington, serves to double the statutory maximum for subsequent drug offenses committed in the state of Washington, thereby making those subsequent offenses ACCA predicates. As a matter of law, it cannot, and specifically, it did not do so in this case. As a matter of law, it cannot. What law? Well, Your Honor, in looking at the offense itself, RCW 695408 defines when a conviction is second or subsequent. And I won't read it, but essentially it says, if the offender's been convicted of an offense under Chapter 6950, an offense under the United States, or of any state relating to narcotic drugs, marijuana, depressant, stimulant, or hallucinogenic drugs. So why isn't possession or being under the influence of heroin within that description? Your Honor, we don't believe Literally, why isn't it under that? We don't believe it's within that description, because we don't believe that that description was ever intended to be read as broadly as it could possibly be read. And if I can address that issue, number one, there is no offense in Washington of being under the influence. It doesn't exist. And when I say that, I don't mean that in a technical sense, that there may be one that has one slightly different element. I mean, there is none. Under Washington law, California Health and Safety Code 11-550 wouldn't be considered a drug offense, for example. And that term is defined in RCW 994A 030 paragraph 21. It's not a drug offense. It wouldn't meet the criteria. And if we look at Washington state law in similar circumstances, this becomes clear. The case of State v. McCollum is instructive. That dealt with a prior version of the doubling statute in a slightly different context. But the clear message was, that the Washington state courts left, is that out-of-state convictions should be addressed on equal footing to in-state convictions. And that's what McCollum said, albeit in a slightly different context. I think it's relevant. I actually performed a Westlaw search of the Washington state criminal law database for this section. And it returned 51 cases. I looked at each one. And none of them was a misdemeanor used to double. In none of them did they involve an offense, which was outside of Washington state, that is not criminal inside of Washington. The point being that there's no indication from any case that I could possibly find that this statute has ever been applied in this manner. Isn't it really a question for us? Maybe I'm wrong on this, so you can explain why. Isn't it a question for us of just normal rules of statutory construction? What does the language that the legislature expressed in that statute on doubling, what should we interpret that to mean? I think, yes, obviously statutory construction is relevant. But I think there are two potential problems, at least. The first being that interpreting it according to its literal terms, that anything that relates to those offenses will lead to absurd results. And I mentioned a few of those, but perhaps the most particular one is if we read this as simply relating to any depressant, for example, a California DUI conviction now becomes a doubler. Alcohol is a depressant. This would be a conviction relating to alcohol. So now any drug offense is doubled if you have a prior DUI. If there was an offense made up of providing caffeine to minors, caffeine is a stimulant. Arguably that's covered in this statute. So if Missouri creates that offense. The statute says narcotic drug. The statute states relating to narcotic drugs, marijuana, depressant, stimulant, or hallucinogenic drugs. So I believe as stated, it would include depressants and stimulants. If a statute was created that was talking about possessing children. That were criminalized. Correct. So I'm saying if you create a misdemeanor in some other state that relates to perhaps precursors for methamphetamine. Now we've created a new offense that would double this. Well, you know, I guess I just – you're doing a reductio ad absurdum argument, but this is an offense involving a narcotic drug in California. And your limiting principle seems to be if it's not recognized as a crime in Washington, then Washington can't be counted. I don't know why that would necessarily be. Well, Your Honor, I think it creates a problem. And I think if we look to cases, again, albeit in a slightly different context, such as Taylor, which talks about saying that we shouldn't allow one state to label an offense in a particular way and have that be a controlling matter. And while I understand that was in the context of labeling a burglary offense, what we're dealing with here is a situation where potentially subsequent developments in a different state's law now changes what offenses can be doubled under Washington law. And I think the fact that we can't find a single case that is even remotely close to these facts is powerful evidence that Washington didn't intend that to be the case. Is there any suggestion that Washington makes this kind of comparison when it does counting of prior conviction? Well, I think that if we look at a case like intraday personal restraint or lavery, which I cited, it talks about foreign convictions in the context of strikes. And it says that the analysis is, is the strike offense from outside similar, analogous to an offense inside of Washington? And the answer is yes. That's the process. Not that California considers it a strike or any other state considers it a strike, but is it a strike inside of Washington? And what we're arguing here is that this was intended to be handled in the same manner. Your argument sounds like one that should be addressed to the Washington legislature. Looking at the plain meaning of this language, it says any other state? Your Honor, I'd love the opportunity to address it to the legislature. But I think the problem becomes that we end up, I think if nothing else, there's a notice problem or a due process problem because this statute is so broad, it's unclear to anyone looking at it as to whether or not it actually applies to a given offense. There could potentially be equal protection problems and privileges and immunities problems as well. And that's why I discussed the fact that I think under the doctrine of constitutional avoidance, we can eliminate some of those issues by simply construing this in a manner that I would say is more reasonable and gets rid of the ambiguity of what it means to be relating to, which seems to me to be incredibly broad language. And if another statute outlaws advocating in favor of marijuana, arguably that relates to marijuana, so we're again doubling. Well, the district court didn't really have much trouble with this. No, Your Honor. The district court said that the simple, that you're arguing that a simple possession, well, that this is not a triggering device and that the Washington courts have rejected a similar argument, it's not exactly the same crime, but why is that? Well, again, Your Honor, I think we're looking at two things and I did want to segue into the other point of the government's argument, which I think relates, which is the government relies to a fair extent on the documents in this actual case to say that the documents state that it had a 10-year maximum. And I did want to address that because the government seems to rely on that as saying it shows that my interpretation of the statutes is incorrect. And I simply want to state that while the judgment and sentences do state a 10-year maximum, they don't even list the California misdemeanor as a prior. It's not reflected anywhere in any of the prior documents. So the government's position amounts to saying that this worked as a doubler, but the courts didn't even know it. Well, you know, that seems to me that should have been argued, that could have been argued or perhaps it was to the panel that sent this back to the district court to determine this issue. I'm sorry. There was a mandate from this court that told the district court that it was supposed to decide the issue of whether he was convicted of a drug-related offense. We didn't decide it because it was raised for the first time on appeal. Correct. But I guess what I'm getting to is. And that was the issue that we asked to be decided. Correct. But I guess what I'm getting at is to the extent that the government is saying we can look to these documents, use those as proof that this was, in fact, a drug-related offense. What I'm saying is I don't think the documents prove what the government is asserting them to prove. Oh, okay. Because the documents in no way reference this conviction. And if the court had used this conviction to double the offenses, then other portions of the documents would have been written up in a different way. Did the district court use the documents? The district court, I believe, narrowly interpreted this court's mandate to simply use the district court. To decide an issue of law. Correct. But to the extent that the district court, in my opinion, did not look beyond the word relating and essentially didn't really address the arguments that we raised regarding overbreadth and that sort of thing. I would like to reserve some time. That's fine. You can reserve your remaining time. Okay, Mr. Harrington. This case has been around a long time. Have you been with it that long? I have, Your Honor. Good afternoon. Joe Harrington from the U.S. Attorney's Office in the Eastern District of Washington in Spokane. And I was the trial attorney that tried this case in Spokane in front of Judge Whaley. And I've been involved. Every time there's an appeal, the sentence seems to get longer. Your Honor, what's happened, just briefly, in the case is that over the course of the several years, the law has changed. We had the law change by way of a Supreme Court ruling. And then the law changed again with respect to Aguilar Montes de Oca. The panel decision that the district court relied on, and then that case was ultimately withdrawn. And then eventually the En Blanc decision came out. I believe it was in August of this past year. So what's happened is, not to be colloquial, but there seems to have been kind of a moving target during the course of this litigation of this case. And that's why each time an issue comes up, it continues the litigation. Your Honors, I see this as having two broad issues in this case. And from my perspective, the first broad issue relates to the two California burglary convictions. But I understand and I recognize that the district court interpreted this court's previous remand as a limited remand. And the district court was only to deal with the question about the prior drug trafficking convictions and whether they were 10 years or greater, and therefore predicate offenses for the armed criminal statute. I would note, however, Your Honor, that after this case was remanded, the Aguilar Montes de Oca case, the panel decision was withdrawn, and the case was in pending En Blanc review. And so the law sort of was shifting at that time. And it would be my suggestion, Your Honors, that because the law was changed, the district court was facing a different set of circumstances based on the law. And I think Judge Whaley recognized that. Although he interpreted the remand as limited, he did make alternate findings in the district court order and found that those two California burglary convictions were, in fact, met the definition of generic burglaries and therefore were AC's predicate offenses under the armed criminal statute. And I submit, Your Honors, that that was an appropriate finding and still is an appropriate finding even after the En Blanc decision by this court. I'll address my analysis and my rationale unless the court doesn't believe that that would be an efficient use of time given the fact that this court may interpret that previous remand as limited and it may not be an issue. I don't know if I can give you guidance. We don't pre-confer, so I couldn't really speak for others. I would say for myself, go ahead and cover all the issues. Thank you, Your Honor, and I will. And I'll do this just briefly. With respect to the En Blanc decision of Aguilar Montes de Oca, the court analyzed whether the modified categorical approach could be used in connection with the California burglary offense under California Penal Code Section 459. This court recognized that the statute itself, the bare elements of the statute, are missing one of the elements of a generic burglary. The generic definition of burglary requires an unprivileged entry to commit the crime of burglary. The California Penal Code under Section 459, however, does not use the words of unlawfully or unprivileged entry. And so the court then, the court in the En Blanc decision, decided that the modified categorical approach under Taylor could be used. And the distinction I am positing to the court here is that Defendant Aguilar's charging document provided that he was charged with willfully and unlawfully entering a structure of residence. He pleaded guilty to the bare elements of the California burglary statute. And there was no indication whether that structure or that residence was open to the public or he had a license or privilege to enter. And that was sort of the theory of the, I believe, this court's analysis. In this case, however, in the Rodriguez case, there's more to the charge and Rodriguez, the defendant, pled to more than just the bare elements. It appeared to be the difficulty in Deoca, in Aguilar Montes Deoca. Here, and these charging documents are set forth in the supplemental excerpt of the record at page 18 and 24, the defendant pled guilty to a charge where his entry was not only willful and unlawful, but was also felonious. And that felonious element was not part of the charge in the Aguilar Montes case. And I would submit respectfully to this court that the fact that you have a requirement of felonious entry would denote and is the functional equivalent of entering without the owner's consent. And therefore, it would be a residence, in this case a personal residence, that was not open to the public and the defendant did not have a license or privilege to enter. And interpreting a felonious entry, I think, comports with this court's en banc decision in Aguilar, which said if the, if in Aguilar's, if its felony complaint to which the defendant pled guilty stated that he did willfully and unlawfully enter a private inhabited dwelling without the owner's consent, the document would have been sufficient to support a finding he committed a generic burglary. I would submit respectfully to this court that the fact that Rodriguez pled to a, for two burglaries which required a felonious entry, that that would meet the definition of a generic, a generic burglary and would comport with the en banc decision in Aguilar Montes de Oca. If the court would, if the court does accept my analysis and my rationale, then I think the Spokane 1995 convictions for drug trafficking, then I think, I don't think there's a dispute that at least one of those convictions would be a crime with which the maximum penalty is ten years or greater. That would provide the third offense for a predicate enhancement of the armed career criminal statute. Now, the second broad issue is if the court does not accept my rationale under the application of De Oca Montes, then the court looks to the three convictions in Spokane 1995, each of which were for a drug trafficking offense. Clearly, there has been no dispute during the long history of this case that in fact Rodriguez was convicted in 1986 of a drug, of a state conviction for being under the influence of a controlled substance, that being cocaine and heroin. According to the pre-sentence investigation report, he was sentenced to 300 days in jail. It was only after that 86 conviction that the three Spokane County convictions for delivery of a controlled substance were imposed on Mr. Rodriguez. It's the government's position that under section 69.50.408A that the doubling statute for second or subsequent offenses imposed a maximum penalty of ten years on each of those three 1995 convictions. And it is a fair reading of the plain language of the statute. I think it was submitted that Judge Whaley did not err in interpreting the language of the doubling statute because the defendant was convicted under any statute of any state relating to narcotic drugs, marijuana, depressive stimulants, or hallucinogenic drugs. And that's exactly what happened here. The statute contains no other limiting conditions. And here the government respectfully submits that each of those three convictions carried a maximum possible penalty of ten years, therefore making them serious drug offenses, therefore making them predicate offenses for armed criminal statute purposes. And I would also note that the judgment and sentence issued in the state court at supplemental excerpt of the record 34, page 53, and page 88 also comport with that analysis because it notes that the maximum penalty is ten years. So for your honors, for that reason, for those reasons, either if the court accepts my analysis of the Aguilar-Montes case or if the court accepts my analysis as found by Judge Whaley at the district court, I would respectfully submit that this court should affirm the sentence imposed. Okay, thank you. Thank you, your honors. Okay, Mr. Campbell, you have a few minutes for rebuttal now. Thank you, your honors. I did want to respond briefly regarding Aguilar-Montes de Oca. I would note that that decision actually specifically applied, said that the burglaries in that case didn't meet the definition of a generic, and I believe that would be the same here. Regarding the word feloniously, in California, that simply refers to the intent to commit a felony therein, and I don't believe that would provide the without consent language that seems to be at issue in Aguilar-Montes. So I don't think that the burglaries are either properly before the court, as I mentioned in my briefing, or that Aguilar-Montes would support the government's position. We would dispute the idea that one of the deliveries would necessarily be prior to the other. I briefed that to a fair extent, but I would point the court to excerpts 97 and 106. All the deliveries are listed as other current offenses. None of them are listed as prior offenses, and RCW 994A-525 explains the computation of offender scores, and it specifically differentiates between current offenses and prior offenses. None of the offenses on those forms are listed as prior offenses. As I mentioned, they were all filed on the same day. In my briefing, I mistakenly said it was November 21st. That was the day they were actually filed. They were actually entered on the 16th. Sentencing occurred that day. None of the forms indicate that one was prior to the other. The offender scores are all the same. They were other current offenses and not prior offenses, so we would dispute the government's contention that one must be prior to the other out of those three. Regarding the language of the statute, again, I believe that the statute is susceptible, and I'm speaking specifically of 6950-408, of different meanings, and that's based on the Washington State interpretations of that statute that seem to indicate it should be interpreted in light of Washington offenses. Under the rule of lenity, we should adopt a more defendant-favorable interpretation of ambiguous provisions, and I believe that this meets that definition. Otherwise, we're punishing those essentially who are from outside of Washington more severely than Washington, and we're allowing other states to redefine Washington criminal code. As counsel had mentioned, the forms, the judgment and sentences did mention that the offenses were listed as 10 years. However, I would note that there are numerous errors in those forms. As I mentioned, the criminal histories are not accurate. There are numerous convictions which are not listed in those forms, including the conviction that the government argues is the doubler. It seems unlikely that that offense would be hidden under these circumstances. I would note also that on, I believe it's ER page 88, it states that the prior California convictions wash. Certainly, if the prior convictions washed, that's an indication that there was no subsequent criminal conduct affecting it. The government's contentions that the superior court was considering these California offenses are simply not warranted by the record. Rather than belabor the matter, I'll sit. Thank you, Mr. Campbell. Well, I thank, again, both counsel for excellent arguments, keeping up the Spokane tradition. I appreciate it. And the case of U.S. v. Rodriguez, 11-30108, shall be submitted, and the court will now adjourn until tomorrow. Thank you. All rise.
judges: Schroeder, Alarcon, Gould